IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KATE GOSSELIN | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | NO.:  5:13-cv-04989 |
| | ) | |
| JONATHAN K. GOSSELIN, | ) | JURY TRIAL DEMANDED |
|     and | ) | |
| ROBERT HOFFMAN | ) | |
|     and | ) | |
| JOHN AND JANE DOES 1-20 | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## FIRST AMENDED COMPLAINT

Plaintiff, Katie I. Gosselin ("Kate" or "Kate Gosselin"), by and through her attorneys, Randazza Legal Group, brings this action against Jonathan K. Gosselin ("Jon" or "Jon Gosselin"), and allege violations of 18 U.S.C. § 1030, the Computer Fraud and Abuse Act ("CFAA") and other statutes. In support of her claims, Plaintiff state the following:

### PRELIMARY STATEMENT

Kate Gosselin and Jon Gosselin became a household sensation after giving birth to sextuplets in 2004. The couple starred on the popular reality show "Jon and Kate Plus 8." Jon & Kate Plus 8 (renamed Kate Plus 8 for the sixth and seventh seasons) is a television reality series which aired from April 4, 2007 until September 12, 2011. In 2009, Jon and Kate separated in a very high profile and public divorce.  Kate is currently a single mother raising eight children.

After the couple was separated, Jon illegally hacked into Kate's email account, and her phone, and bank accounts. Jon also stole a hard drive from Kate's house, which contained private and confidential material. Jon then gave the contents of Kate's email account and the hard drive, all of which were acquired illegally, to his friend and business partner, tabloid reporter Robert Hoffman. Hoffman used the illegally acquired data to publish a defamatory book about Kate called "Kate

Gosselin: How She Fooled The World." The book was removed from large distributors like Amazon.com because the information was obtained illegally. Nevertheless, the damage was done with the release of the personal and private information, and the defendants continue to possess this illegally obtained private information.

### THE PARTIES

1. Plaintiff, Kate Gosselin is an adult individual residing in Sinking Spring, Pennsylvania.

2. Defendant, Jon Gosselin, is an adult individual residing in Wyomissing, Pennsylvania.

3. Defendant, Robert Hoffman, is an adult individual residing in Reading, Pennsylvania.

4. Upon information and belief, Defendants John and Jane Does 1 through 20 are individuals whose names and addresses of residences are unknown.

### VENUE AND JURISDICTION

5. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1331, as a federal question is at issue, based upon the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1367, based upon the pendent and ancillary jurisdiction of this Court.

7. Venue is proper in this Court pursuant to 28 U.S.C. §1391(a), as all of the parties reside within the Eastern District of Pennsylvania.

### FACTUAL ALLEGATIONS

8. In April 2007, Kate Gosselin and her husband Jon Gosselin became celebrities after giving birth to six children in addition to their previous two children. In total, Jon and Kate Gosselin had eight children.

9. The couple starred in the reality television series "Jon and Kate Plus 8."

10. In 2009, the couple separated in a high profile and public divorce.

11. After the divorce, Jon began accessing Kate's password-protected email account without her authorization.

12. Kate learned of Jon's unauthorized access only after it had occurred.

13. Jon knew he did not have authorization to access this e-mail account.

14. Jon also began accessing Kate's online, password-protected banking accounts without her authorization.

15. Jon knew he did not have authorization to access these password-protected online banking accounts as well.

16. Jon also accessed Kate's cellphone without her authorization.

17. Jon also stole a hard drive from Kate's house, which contained protected, private and confidential material.

18. On information and belief, the contents of this hard drive were provided to Robert Hoffman and the John Doe defendants.

19. The information contained in Kate's password-protected email account, password-protected online bank accounts, and cellphone is confidential.

20. The information contained in Kate's email account, online bank accounts, and cellphone has independent value because of Kate's celebrity status.

21. At all times relevant to the Complaint, the above accounts were protected by a password.

22. At no point did Kate Gosselin give her password to Jon Gosselin or anyone else.

23. At no point was Jon Gosselin or anyone else authorized to access Kate Gosselin's protected email account, online bank accounts, or cellphone.

24. On information and belief, Jon has continued to access Kate's email account, online banking account, and cellphone.

25. On information and belief, Jon's unauthorized access to known password protected accounts through the Internet has been continuous and systematic.

26. At some point in time, Jon Gosselin and tabloid reporter Robert Hoffman became close friends.

27. Hoffman publicly described his ongoing friendship with Jon Goesslin and even bragged he was in possession of 5,000 family photos, personal documents, tax and business records plus contracts – on

information and belief, they were acquired from Jon Goesselin, and were acquired with the knowledge that Jon obtained them illegally.

28. At a time currently unknown that will be uncovered in discovery, Jon Gosselin disseminated the information he obtained from hacking Kate Gosselin's email account, bank records, computer and cellphone to Defendant Robert Hoffman.

29. The Defendants then published the information that Jon Gosselin illegally obtained in several publications.

30. Hoffman knew his activities were unlawful, and at one point even told Radar Online: "I'll be sued by one or more parties before this is over[1]."

31. Hoffman falsely claimed in certain publications that he recovered the data from Kate's computer by digging through her trash that he found on the street.  This demonstrates his knowledge that the materials were obtained illegally, as it is a sign of an attempt to cover up his unlawful activities.  The materials in his possession could not possibly be physically found in paper format to that extent.  If Hoffman was picking through trash on the street, he did not find this trove of personal information while engaging in his trash-picking endeavors.

32. In reality, Hoffman, Jon Gosselin, and Does 1-20, acting in concert and on one another's behalf, hacked into Kate Gosselin's various accounts – and the protected computers that contained the data they accessed – then disseminated the illegally obtained information.

33. Hoffman and Jon Gosselin supplied various tabloids with stories painting Kate Gosselin in a poor light after they had unlawfully obtained this private information.

34. Hoffman and Jon Gosselin then used the stolen private information to make stories more salacious for the tabloids and draw further attention to the highly sensitive and private information they had obtained, which equated to higher payouts for their information.

35. Hoffman further used the illegally obtained information obtained from Jon Gosselin to publish a book

---

[1] http://radaronline.com/exclusives/2012/09/kate-gosselin-book-removed-amazon-jon-gosselin-pal-author-robert-hoffman/

about Kate called "Kate Gosselin: How She Fooled The World" in 2012. Hoffman spoke to the media about his publication in order to ensure it was more widely purchased, and that the private information about Plaintiff that it contained in whole or in part received the widest possible public dissemination.

36. Hoffman's book contained defamatory and untrue information about Kate Gosselin, along with information that painted Kate in a false and negative light.

37. Amazon.com pulled "How She Fooled The World" just two days after it was published, in part due to the fact it relied in false information, and information Hoffman obtained illegally.

38. On information and belief, Defendants Hoffman, Jon Gosselin, and Does 1-20 illegally accessed Kate's computer's confidential data, and then conspired among each other to spread false, defamatory, and unflattering information about Kate Goesslin for the purpose of profiting from the book and the tabloid publications.

## COUNT I
## VIOLATION of 18 U.S.C. § 1030(g)

39. Plaintiff repeats and re-alleges each and every allegation above as if fully set forth herein.

40. Plaintiff asserts this Count against Defendants, jointly and severally pursuant to § 1030 of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030.

41. Section 1030 provides in the relevant part:

> (a) Whoever-
> * * * * *
> (2) intentionally accesses a computer without
> authorization or exceeds authorized access, and thereby obtains-
> (C) information from any protected computer if the conduct
> involved an interstate or foreign communication;
> * * * * *
> shall be punished as provided in subsection (c) of this section.
> (b) Whoever attempts to commit an offense under
> subsection (a) of this section shall be punished as provided in
> subsection (c) of this section.
> * * * * *
> (g) Any person who suffers damage or loss by reason
> of a violation of this section may maintain a civil action against the
> violator to obtain compensatory damages and injunctive relief or
> other equitable relief. . .. No action may be brought under this

        subsection unless such action is begun within 2 years of the date of
the act complained of or the date of the discovery of the damage.

42. The term "protected computer" includes "a computer ... which is used in interstate or foreign commerce or communication." 18 U.S.C. § 1030(e)(2)(B).

43. Within this section, the term "exceeds authorized access" means "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accessor is not entitled so to obtain or alter." 18 U.S.C. § 1030(e)(6).

44. Kate Gosselin's email account and bank accounts were operated by computers used in interstate commerce and protected by passwords – thus constituting "protected computer(s)" as defined in 18 U.S.C. § 1030(e)(2)(B).

45. By accessing these accounts, the Defendants necessarily accessed these protected computers, wherein the data relevant to Plaintiff's accounts resided.

46. At no time did Jon Gosselin, nor anyone else, have legal permission or lawful access to Kate Gosselin's password-protected email account, or online bank account, nor the computers or computer services on which those accounts were accessible.

47. At no time had Jon Gosselin, nor anyone else, been given a password or authority to access Plaintiff's password-protected email account, or online bank account, nor the computers or computer services on which those accounts were accessible.

48. Jon Gosselin, and potentially others – whose identities shall be determined during the course of litigation – improperly used Plaintiff's login information, namely her login user identity and her password, without authorization to access the contents of those accounts and the computers on which her password-protected and highly sensitive personal emails and banking information resided.

49. By accessing Kate's password-protected email account and online bank records without authorization, each Defendant unlawfully accessed a protected computer without authorization, and/or accessed a protected computer in excess of any authorization as prohibited by 18 U.S.C. §1030.

50. Defendants accessed Kate Gosselin's computer and computer services without authority to do so and in doing so, caused in excess of $5,000 in economic losses arising from Jon's unauthorized use of her password-protected online accounts.

51. Specifically, Plaintiff's losses arose in the form of the cost of her time in investigating and assessing the harm caused by Jon and others' unlawful access of the protected computers where her account information was stored, ensuring the integrity of the information residing on those protected computers, and the lost revenue and consequential damages Plaintiff suffered from conducting this investigation.

52. Since the Defendants were not authorized to access Kate Gosselin's email account, online bank account, and cellphone, they exceeded the scope of their authorized access (which was no authority to access it whatsoever).

53. By virtue of the foregoing, Defendants are liable to Plaintiff for their violations of 18 U.S.C. § 1030.

## COUNT II
## INVASION OF PRIVACY – PUBLICITY GIVEN TO PRIVATE LIFE

54. Plaintiff repeats and re-alleges each and every preceding allegation as if fully set forth herein.

55. At all times material hereto, and pursuant to the common law of Pennsylvania, Plaintiff had a reasonable expectation of privacy with respect to the contents of her e-mail account, online banking account, and cellular phone.

56. The contents of Plaintiff's e-mail account, online banking accounts, and cellular phone constitute private facts that were not disclosed to the public, even despite Plaintiff's stature following the broadcast of "Jon and Kate Plus 8."

57. By using this information in the publication of a book about Plaintiff, Defendants gave publicity to the information obtained from Plaintiff's private and password-protected e-mail account, online banking accounts, and cellular phone, and disclosed private facts obtained from these sources to the general public.

58. In fact, Defendant Hoffman's book, which all Defendants contributed in creating in various ways, was

widely available for distribution on Amazon.com, one of the top sellers of books and e-commerce websites in the world.

59. Defendant Hoffman further engaged the media about the contents of his book, to ensure greater sales of it and that more people would be exposed to its contents – including its disclosure of private facts obtained from Plaintiff's password-protected e-mail account and online banking accounts.

60. The publicity the Defendants generated by using this private, password-protected information to publish a book about Plaintiff is highly offensive to a reasonable person, whether or not similarly situated to Plaintiff.

61. The information Defendants drew upon and included, in whole or in part, in Defendant Hoffman's book is not of legitimate concern to the public, as it was password protected for the very sake of keeping it private.[2]

62. Plaintiff has suffered damages as a result of this invasion of privacy.

## COUNT III
## CIVIL CONSPIRACY

63. Plaintiff repeats and re-alleges each and every preceding allegation as if fully set forth herein.

64. Defendants, both known and unknown, conspired together to engage in actions that violated above-cited federal statute and Pennsylvania common-law tort as described in this Complaint.

65. Defendants shared a common, unlawful goal of invading Plaintiff's privacy and committing the unauthorized access of protected computers possessing data found within Plaintiff's password-protected private e-mail and banking accounts.

66. Defendants engaged in numerous overt acts in furtherance of this common purpose, including but not limited to, actions detailed in paragraphs 8 through 62, ranging from the unlawful use of Plaintiff's user identities and passwords for her e-mail and online banking accounts, the gathering of that information, and the publication of a book containing this information.

---

2  Indeed, financial information of the kind available in Plaintiff's online banking accounts would have to be heavily redacted if it were to be filed with this Court.

67. While Defendants incidentally benefitted from the conspiracy's fruits and their own subsequent actions, their sole and common purpose for violating Plaintiff's rights as set forth within this Complaint was the violation of Plaintiff's rights.

68. Only after conspiring to commit the tortious acts detailed within the Complaint, and committing those acts, were Defendants able to use the fruits of their unlawful conduct for their personal benefit.

69. Plaintiff was damaged by the actions of the Defendants as set forth in paragraphs 8 through 62.

## COUNT IV
## CONCERTED TORTIOUS ACTION

70. Plaintiff repeats and re-alleges each and every preceding allegation as if fully set forth herein.

71. The Defendants and others did various tortious acts in concert with each other as set forth above in the Complaint.

72. These Defendants' tortious acts were committed pursuant to a conspiracy and scheme to unlawfully access Plaintiff's private records and publicly disclose them Gosselin as set forth above.

73. Jon Gosselin gave substantial assistance and encouragement to the other Defendants and others to engage in the tortious acts as set forth above in the Complaint.

74. Robert Hoffman gave substantial assistance and encouragement to the other Defendants and others to engage in the tortious acts as set forth above in the Complaint, as he would ultimately be able to profit from the fruits of his and the other Defendants' unlawful conduct.

75. John Does 1-20 gave substantial assistance and encouragement to the other Defendants and others to engage in the tortious acts as set forth above in the Complaint.

76. The Defendants' actions violate the federal statute and Pennsylvania common-law tort set forth in this complaint, and also constitute an invasion of Kate Gosselin's privacy.

77. The Defendants conduct was malicious and outrageous as set forth above.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Kate Gosselin, requests judgment in her favor and against

Defendants, Jon Gosselin, Robert Hoffman, and John Does 1-20, jointly and severally, as follows:

1) for losses in excess of $5,000 under 18 U.S.C. § 1030(g);
2) for compensatory damages;
3) for actual damages;
4) for punitive damages based on the Defendants' willful, reckless, and wanton conduct;
5) for attorneys' fees and costs;
6) for declaratory and injunctive relief; and
7) for such other and further relief as this Court deems just and appropriate.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues for which a right to jury trial exists.

### RANDAZZA LEGAL GROUP

By: _____
A. Jordan Rushie, *Of Counsel*
PA I.D. No. 209066
2424 E York Street, Suite 316
Philadelphia, PA 19125
P. (215) 385-5291
F. (215) 525-0909
ajr@randazza.com

Marc J. Randazza (pro hac vice pending)
*3625 S. Town Center Drive*
Las Vegas, NV 89135
702.420.2001
mjr@randazza.com

*Attorneys for Kate Gosselin*

Dated:  October 2, 2013

### CERTIFICATE OF SERVICE

I am an employee of Randazza Legal Group and, pursuant to Fed. R. Civ. P. 5 and Local Rule 5.1.2, served the foregoing document on all parties using this Court's cm/ecf system on October 2, 2013.

_____
Employee of Randazza Legal Group

Date: October 2, 2012